UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOLLY PERALTA,**

          Plaintiff,

vs.

Case No.

Hon.

**ETON STREET RESTAURANT, INC.** d/b/a
**BIG ROCK CHOP HOUSE**,

          Defendant.
_____/
Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **MOLLY PERALTA**, for her Complaint against Defendant Eton Street Restaurant, Inc. d/b/a Big Rock Chop House stating the following:

## **INTRODUCTION**

1. Plaintiff Molly Peralta was a long-time manager at Defendant's restaurant, Big Rock Chophouse, until she required leave due to Covid-19 and then was additionally punished for refusing to commit fraud by performing unpaid labor for Defendant while collecting unemployment.

Following Governor Whitmer's Executive Order 2020-9 closing restaurant's indoor service, Defendant sought to circumvent fully compensating its employees by instead having them collect unemployment while performing work. Plaintiff refused to do so. Concurrently, Plaintiff notified Defendant that she was experiencing Covid-19 symptoms. Defendant instructed Plaintiff to work for one more day with knowledge of these symptoms. Plaintiff was not offered any form of paid leave under the FFCRA or FMLA. Ultimately, Plaintiff was just told to stay at home while Defendant figured out what to do with her. On May 26, 2020, Plaintiff was notified that she would not be returning to her previous management role and was instead terminated. Plaintiff was explicitly told that Defendant needed to retain those who had been working (unpaid and without taking protected leave) instead of her.

Within this complaint, Plaintiff alleges that she was terminated in violation of her rights afforded under the FLSA, FFCRA, FMLA and in violation of public policy.

## PARTIES

2.  Plaintiff Molly Peralta is an individual who resides in Wayne County, Michigan.

3.  Defendant Eton Street Restaurant, Inc. is a domestic profit corporation located in Birmingham, Michigan, Oakland County.

4.  At all times relevant herein, Defendant acted by and through its agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICITON AND VENUE

5.  This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised Federal Claims under the Fair Labor Standards Act, 29 U.S.C 201, *et seq.* and the Families First Coronavirus Response Act, Pub.L. No. 116-127, 134 Stat. 178 (2020).

6.  This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7.  Defendant Eton Street Restaurant, Inc., d/b/a Big Rock Chop House ("Big Rock" or "Defendant") is a high-end steak house located in Birmingham, MI.

8.  Big Rock has an annual dollar volume of sales of at least $500,000.

9. Plaintiff Molly Peralta ("Plaintiff") began her employment with Big Rock since 2015. Beginning in 2017, Plaintiff became a manager managing the main, the cigar lounge, and acted as floor and host manager.

10. During her employment, Plaintiff was a valued employee, received positive reviews, and no significant discipline.

11. Around early March 2020, America began seeing multiple cases of the novel coronavirus ("COVID-19"). Covid-19 is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person.

12. On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, Michigan's Governor Whitmer issued *Executive Order 2020-4* declaring a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

13. On March 16, 2020, Governor Whitmer issued *Executive Order 2020-9* which, among other things, temporarily limited restaurants to carry out service.

14. On March 16, 2020, Big Rock's General Manager Vera Day Rizer ("Day Rizer") met with Plaintiff and assistant general manager, Fabrice Valiot ("Valiot") and told them "not to worry" and that they would be "keeping their jobs."

15. Later on March 16, 2020, Day Rizer informed all non-management staff that they were laid off. Additionally, she instructed them to apply for unemployment.

16. Despite being instructed to apply for unemployment, several kitchen staff never stopped working. On information and belief, these individuals were compensated through unemployment instead of wages from Defendant.

17. Several employees were paid cash and instructed by Defendant not to clock into work so that they could collect unemployment.

18. On March 18, 2020, President Donald Trump signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))* Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See* 29 C.F.R. § 826.20

19. On March 18, 2020, Plaintiff's supervisor, Day Rizer, instructed Plaintiff, Valoit, and one other employee, to apply for unemployment backdated to the beginning of the week—March 15. That same day, Day Rizer had similar discussion with other employees at separate meetings.

20. Later March 18, Day Rizer announced that the restaurant was going to shut down entirely until further notice.

21. While at work on March 18, Plaintiff and other employees were allowed to apply for unemployment benefits while sitting in Defendant's sales office.

22. After signing up for unemployment benefits, Plaintiff was then notified by Day Rizer that the restaurant was still going to be open for takeout and Plaintiff was expected to work. Plaintiff responded "okay great so I am not going to on unemployment." Day Rizer responded, "no you're going to continue to be on unemployment and we're going to figure out the schedule." Plaintiff responded with a frustrated and confused look.

23. In doing so, Defendant instructed employees to return to work while continuing to collect unemployment. The idea was that the employees would work for free while collecting unemployment benefits.

24. Plaintiff discussed with other employees that Day Rizer was essentially asking employees to work for free while collecting unemployment. Plaintiff and others expressed that they were scared they would be terminated if they didn't.

25. Defendant scheduled Plaintiff to work every day that week despite encouraging Plaintiff to collect unemployment and discontinuing her pay.

26. The majority of Defendant's employees accepted this proposition. On information and belief, only four employees, including Plaintiff, refused to perform work for free and fraudulently obtain unemployment.

27. On March 19, 2020, Plaintiff developed symptoms potentially related to Covid-19 including a fever, a sore throat, and an overall ill feeling. Plaintiff notified Day Rizer stated that she probably should not come in to work. Day Rizer instructed Plaintiff to come in anyways. Due to this pressure, Plaintiff did go into work.

28. Day Rizer also wanted Plaintiff to interview a potential new employee on March 19. Plaintiff told Day Rizer that she didn't believe it was safe to have a stranger in the restaurant and reminded her that she was not feeling well. Plaintiff refused to interview the interviewee.

29. On March 19, 2020, several employees again had a conversation about how they were afraid of retaliation from Day Rizer for refusing to work for free. The conversation also included a discussion about how Day Rizer was not taking the pandemic seriously and was not interested in employee safety or following the rules related to it.

30. On March 20, 2020, Day Rizer called and left Plaintiff a voicemail to call her back. Plaintiff texted Rizer and said that her throat was still sore. Day Rizer

instructed Plaintiff not to come in and to stay at home until she had some plan from the owners.

31. After, Plaintiff called Day Rizer to discuss what she meant in her text. During this conversation, Plaintiff said she was fearful that she had Covid-19 or wasn't sure if she was symptomatic due to the anxiety and stress of what is being asked of her by Day Rizer. Day Rizer said she was going to discuss the matter with the owners and figure out a plan for Plaintiff. Day Rizer also quipped that it seemed younger people were terrified of the pandemic but "us older people aren't scared."

32. Plaintiff and her boyfriend tried but had difficulty obtaining Covid-19 tests.

33. On March 27, 2020, Plaintiff sent a text to Day Rizer to inform her that she was feeling better. Plaintiff asked if there were any updates and inquired when Big Rock would return to its normal business (meaning she was not going to come in on unemployment). Plaintiff did not receive a response.

34. On March 30, Day Rizer responded telling Plaintiff to sit tight and provided a link for Plaintiff to provide to her employees for a financial relief opportunity for restaurant workers during the pandemic. Plaintiff shared this link with Defendant's employees as instructed.

35. During this off period, Plaintiff was told by a coworker that Day Rizer and other management were stating that Plaintiff abandoned her job and was refusing to work. Also, that Plaintiff better return to help immediately.

36. Plaintiff received no communications from Defendant between March 30 and April 21.

37. On April 21, 2020, Plaintiff emailed Day Rizer and Defendant's accountant inquiring about her unemployment claim. Plaintiff received a statement from the agency that Defendant had provided a certain response. Day Rizer responded that Defendant was not contesting the unemployment.

38. On May 2, 2020, Day Rizer deactivated Plaintiff's access to shift notes and other management systems without notice.

39. On May 18, 2020, Plaintiff emailed Day Rizer inquiring whether there was going to be a manager's meeting to discuss reopening Big Rock and getting things back to normal. Day Rizer did not respond.

40. On May 26, 2020, Plaintiff received a call from Day Rizer informing her that she was being terminated. Plaintiff immediately stated that she felt she was being retaliated against for refusing to come in and work while on unemployment. Day Rizer responded she was instructed by the owners that she "had to make some cuts and had to take care of the people who had been there for the last three months with her." (*the people who at least partially worked while collecting unemployment*)

41. During the period of March 19-May 26, 2020, numerous employees of Defendant were asked and agreed to work while collecting unemployment benefits. These employees either retained their positions or refused an offer of reinstatement.

42. On information and belief, the only four people who were not offered reinstatement following the reopening were the individuals who did not perform unpaid work during the period in which they collected unemployment and/or took leave due to Covid-19 symptoms.

43. On information and belief, an employee was promoted to the position previously held by Plaintiff.

## COUNT I
## UNLAWFUL RELATIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 215)

44. All preceding paragraphs are incorporated by reference.

45. At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Fair Labor Standards Act, 29 U.S.C 201, *et seq*.

46. Plaintiff engaged in protected activity by refusing to perform unpaid work.

47. Plaintiff engaged in protected activity when she openly discussed refusing to perform unpaid work with her coworkers.

48. Defendant retaliated against Plaintiff by terminating and replacing her due to her for not performing unpaid work in violation of the FLSA.

49. Defendant's discrimination, retaliation, and discharge was prohibited under the FLSA (29 U.S.C. § 215(3)).

50. The actions of Defendant were intentional and willful.

51. As a direct and proximate result of Defendant's unlawful actions against Plaintiff, as described in this Complaint, Plaintiff has sustained injuries and damages, including, without limitation, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community, and loss of the ordinary pleasures of everyday life, including the opportunity to pursue her gainful occupation of choice.

## COUNT II
## RETALIATION--MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT –Mich. Comp. Laws. Ann. 408.411

52. All preceding paragraphs are incorporated by reference.

53. Defendant retaliated against Plaintiff by terminating and replacing her due to because she did not perform unpaid work and/or refused to perform unpaid work in violation of the Michigan Workforce Opportunity Wage Act.

54. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; significant medical bills; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## COUNT III
## VIOLATION OF THE FFCRA, FLSA, AND FMLA - INTERFERENCE

55. All preceding paragraphs are incorporated by reference.

56. As a result of the Covid-19 pandemic, Congress expanded the FMLA through the FFCRA to cover Employers with under 50 employees for Covid-19 related purposes.

57. The FFCRA, specifically, the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))*

58. Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See 29 C.F.R. § 826.20*

59. The Department of Labor has ruled Covid-19 related symptoms as experiencing a fever, dry cough, shortness of breath, or shortness of breath; or other symptoms identified by the US Centers for Disease Control and Prevention (CDC).

60. An employee returning from FFCRA paid sick leave or family leave has the right to be restored to the same or an equivalent position under the FMLA. *See 29 C.F.R. § 826.30(a)*

61. That to that end, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

62. That at all times material hereto, Defendant was a covered employer as defined by the FMLA, the FFCRA, and the applicable federal regulations.

63. The Defendant has less than 500 employees.

64. Plaintiff was an eligible for sick leave and paid leave under the FFCRA.

65. Plaintiff required leave for "a qualifying need related to a public health emergency" and/or was "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

66. Plaintiff informed Defendant that she needed leave due to symptoms related to Covid-19.

67. Defendant were aware Plaintiff required leave for these reasons.

68. Defendant required Plaintiff to come in and work despite her request for leave.

69. Defendant did not compensate Plaintiff during her available protected leave as required pursuant to the FFCRA.

70. Defendant intentionally ignored Plaintiff after she stated she had recovered from her Covid-19 symptoms and was ready to return to work.

71. Defendant terminated Plaintiff for taking leave which was protected under the FMLA.

72. Defendant failed to inform Plaintiff of her rights pursuant to the FFCRA, FMLA, and FLSA.

73. Defendant did not inquire further to obtain any additional information or doctor's notes from Plaintiff regarding her medical condition and need for leave.

74. Defendant has interfered with and denied plaintiff her FFCRA/FMLA rights as described above and herein, including, but not limited to, failing to preserve Plaintiff's position as she took leave protected by the FFCRA/FMLA to address her need for Covid-19 symptoms and testing and instead discharging Plaintiff from her position, in violation of the FMLA and FFCRA.

75. Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

76. Defendant's interference with Plaintiff's FFCRA/FMLA leave has directly and proximately caused Plaintiff great damages, including embarrassment, humiliation, outrage, mental distress and economic loss of large but as of yet undetermined proportions.

## COUNT IV
## **VIOLATION OF THE FFCRA AND FMLA - RETALIATION**

77. All preceding paragraphs are incorporated by reference.

78. Plaintiff took leave which was protected under the FMLA as expanded by the FFCRA.

79. Defendant retaliated against Plaintiff in violation of the FMLA leave by terminating her for taking leave which qualified as protected leave in violation of the FMLA and FFCRA.

80. Defendant deliberately ignored Plaintiff following her leave.

81. Defendant's GM Day Rizer explicitly told Plaintiff that she needed to take care of the individuals who actually worked during the break.

82. Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

83. There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions described above.

84. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

85. All preceding paragraphs are incorporated by reference.

86. On or about May 26, 2020 Defendant wrongly terminated Plaintiff in contravention of public policy in that Plaintiff refused to violate the law.

87. Defendant terminated Plaintiff for her refusal to work unpaid while collecting unemployment—an act which amounts to fraud.

88. Defendant encouraged its employees to violate the law by performing unpaid work while collecting unemployment.

89. Defendant rewarded the employees who violated the law by retaining their positions while punishing those who did not perform unpaid work with termination or lay off.

90. Defendant discharged Plaintiff in illegal retaliation for exercising a well-established right.

91. Defendant in bad-faith, wrongfully, maliciously, and intentionally terminated Plaintiff's employment in violation of the public policy, causing her to be humiliated in the process.

92. Defendant's termination of Plaintiff in violation of public policy of the State of Michigan has damaged her by loss of earnings and earning capacity; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Grant her all available compensatory damages for economic injury, including back and front pay, mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

b. Grant her all available liquidated damages pursuant to the FLSA, FFCRA, and FMLA;

c. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

d. Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: July5, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOLLY PERALTA,**

         Plaintiff,

vs.

**ETON STREET RESTAURANT, INC.** d/b/a
**BIG ROCK CHOP HOUSE**,

         Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Molly Peralta hereby demands for a trial by jury.

         Respectfully submitted,

         By: /s/ Jack W. Schulz
         Jack W. Schulz (P78078)
         SCHULZ GOTHAM PLC
         *Attorney for Plaintiff*
         PO Box 44855
         Detroit, MI 48244
         (313) 246-3590

DATE: July 5, 2020