UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOLLY PERALTA,**
**CAITLIN OGILVIE,** and
**CHRISTIAN HAROUTUNAIN,**

                                            Case No. 20-cv-11817

              Plaintiffs,

vs.                                    Hon. Gershwin A. Drain

**ETON STREET RESTAURANT, INC.** d/b/a
**BIG ROCK CHOP HOUSE**,

              Defendant.

                                                       /

| | |
|---|---|
| Jack W. Schulz (P78078) | Christopher E. LeVasseur (P35981) |
| SCHULZ GOTHAM PLC | STARK REAGAN, PC |
| PO Box 44855 | 1111 W. Long Lake Rd., Ste. 202 |
| Detroit, MI 48244 | Troy, MI 48098 |
| (313) 246-3590 | (248) 641-9955 |
| jackwschulz@gmail.com | clevasseur@starkreagan.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

                                                       /

### <u>AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

**NOW COMES** Plaintiffs, **MOLLY PERALTA, CAITLIN OGILVIE**, and

**CHRISTIAN HAROUTUNIAN** for their Amended Complaint against Defendant

Eton Street Restaurant, Inc. d/b/a Big Rock Chop House stating the following:

## INTRODUCTION

1.     Plaintiffs Molly Peralta, Caitlin Ogilvie, and Christian Haroutunian were long-time employees at Defendant's restaurant, Big Rock Chophouse, until they each either refused to commit fraud by performing unpaid labor for Defendant while collecting unemployment, required leave due to Covid-19, or both.

Following Governor Whitmer's Executive Order 2020-9 closing restaurant's indoor service, Defendant sought to circumvent fully compensating its employees by instead having them collect unemployment while performing work. Plaintiffs Peralta and Ogilvie immediately refused to do so. Haroutunian worked for a brief period unpaid for fear of losing his job but opted not to apply for unemployment.

Separately, both Peralta and Haroutunian individually notified Defendant that they were experiencing Covid-19 symptoms and needed to take leave. Disturbingly, Defendant instructed Peralta to work for one more day with knowledge of these symptoms. Plaintiffs were not offered any form of paid leave under the FFCRA or FMLA.

Ultimately, each Plaintiff was notified that they were terminated or otherwise not being reinstated.  When the dust settled, Defendant reinstated all but four employees— the four individuals who refused to work unpaid while collecting unemployment, required Covid-19 related leave, or both. (Three of which are Plaintiffs to this suit)

Additionally, Peralta was explicitly told that Defendant needed to retain those who had been working (unpaid and without taking protected leave) instead of her.

Within this complaint, Plaintiffs allege that they were terminated in violation of their rights afforded under the FLSA, FFCRA, FMLA and in violation of public policy.

## PARTIES

2.     Plaintiff Molly Peralta is an individual who resides in Wayne County, Michigan.

3.     Plaintiff Caitlin Ogilvie is an individual who resides in Macomb County, Michigan.

4.     Plaintiff Christian Haroutunian is an individual who resides in Macomb County, Michigan.

5.     Defendant Eton Street Restaurant, Inc. is a domestic profit corporation located in Birmingham, Michigan, Oakland County.

6.     At all times relevant herein, Defendant acted by and through its agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiffs have raised Federal Claims under the Fair Labor Standards Act, 29 U.S.C 201,

*et seq.*, the Family Medical Leave Act, and the Families First Coronavirus Response Act, Pub.L. No. 116-127, 134 Stat. 178 (2020).

8.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## GENERAL ALLEGATIONS

10.      Defendant Eton Street Restaurant, Inc., d/b/a Big Rock Chop House ("Big Rock" or "Defendant") is a high-end steak house located in Birmingham, MI.

11.      Big Rock has an annual dollar volume of sales of at least $500,000.

12.      Plaintiff Molly Peralta ("Peralta") began her employment with Big Rock in 2015. Beginning in 2017, Plaintiff became a manager managing the main, the cigar lounge, and acted as floor and host manager.

13.      Plaintiff Caitlin Ogilvie ("Ogilvie") began her employment with Big Rock in 2017. Ogilvie held the position of sales manager.

14.      Plaintiff Christian Haroutunian ("Haroutunian") began his employment with Big Rock in 2018. Haroutunian held the position of sous chef.

15.      During their employment, Peralta, Ogilvie, and Haroutunian were valued employees, received positive reviews, and no significant discipline.

16.      Around early March 2020, America began seeing multiple cases of the novel coronavirus ("COVID-19"). Covid-19 is a respiratory disease that can result in

4

serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person.

17.    On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, Michigan's Governor Whitmer issued *Executive Order 2020-4* declaring a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

18.    On March 16, 2020, Governor Whitmer issued *Executive Order 2020-9* which, among other things, temporarily limited restaurants to carry out service.

19.    On March 16, 2020, Big Rock's General Manager Vera Day Rizer ("Day Rizer") met with Peralta and assistant general manager, Fabrice Valiot ("Valiot") and told them "not to worry" and that they would be "keeping their jobs."

20.    Shortly after the meeting with Peralta, Day Rizer met with Ogilvie and another group of managers and informed them that all non-management employees were being laid off.  Additionally, that Ogilvie was not presently being laid off but may be soon.

21.     Later the day, Day Rizer informed non-management staff that they were laid off.  Additionally, she instructed them to apply for unemployment.  However, these employees were expected to continue to work.

22.     On March 18, 2020, President Donald Trump signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))* Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See* 29 *C.F.R. § 826.20*

23.     On March 18, 2020, Peralta's supervisor, Day Rizer, instructed Plaintiff, Valoit, and one other employee, to apply for unemployment backdated to the beginning of the week—March 15.

24.     Shortly after on March 18, 2020, learned that folks were being asked to work and apply for unemployment.  Ogilvie confided in another sales manager that she did not feel comfortable working for free and that she expected to be paid and not collect unemployment if Defendant wanted her working.

25.     Soon after, Day Rizer met one on one with Ogilvie and instructed to apply for unemployment.

26.     Next, Day Rizer, along with Executive Chef Eric Voight ("Chef Voight"), met with Haroutunian to discuss continuing to work while collecting unemployment. At the meeting, Haroutunian was informed that Defendant could no longer pay his salary and that he should file for unemployment. Day Rizer told Haroutunian that Defendant would be "taking care " of the employees who continued to work.

27.     Based on Day Rizer's statement, Haroutunian felt compelled to work for free in fear of retaliation if he did not.

28.     Later March 18, Day Rizer announced that the restaurant was going to shut down entirely until further notice.

29.     While at work on March 18, Peralta, Ogilvie, and other employees were allowed to apply for unemployment benefits while sitting in Defendant's sales office.

30.     Peralta and Ogilvie did apply for unemployment in Defendant's sales office. Day Rizer was aware this occurred.

31.     After signing up for unemployment benefits, Peralta was then notified by Day Rizer that the restaurant was still going to be open for takeout and Peralata was expected to work. Peralta responded "okay great so I am not going to on unemployment." Day Rizer responded, "no you're going to continue to be on

unemployment and we're going to figure out the schedule." Peralta responded with a frustrated and confused look.

32.     Day Rizer quipped to Ogilvie that she might as well collect unemployment and go into work until this thing blows over.

33.     In making these comments, Day Rizer was affirming that she was instructing employees to continue working unpaid while collecting unemployment.

34.     Peralta and Ogilvie discussed with other employees that Day Rizer was asking them to work for free while collecting unemployment. Peralta and others expressed that they were scared they would be terminated if they did not.

35.     Around the same time, Haroutunian notified Chef Voight that he believed it was illegal to collect unemployment while continuing to work. Chef Voight responded that he "disagreed."

36.     Defendant scheduled Peralta, Ogilvie, and Haroutunian to work their usual schedules despite encouraging them to collect unemployment, knowledge they had already applied for unemployment, and discontinuing Peralta and Ogilvie's pay. (Haroutunian received a smaller rate of pay initially but had all compensation cutoff sometime in April)

37.     Despite being instructed to apply for unemployment, several kitchen staff never stopped working. On information and belief, these individuals were either compensated through unemployment instead of wages from Defendant.

38.     Employees, including Haroutunian, were instructed not to clock in while performing work.

39.     The majority of Defendant's employees accepted this proposition.   On information and belief, only four employees, including Plaintiffs Peralta, Ogilvie, and Haroutunian, refused to perform work for free and fraudulently obtain unemployment.

40.     On March 19, 2020, Peralta developed symptoms potentially related to Covid-19 including a fever, a sore throat, and an overall ill feeling. Peralta notified Day Rizer stated that she probably should not come in to work.  Day Rizer instructed Peralta to come in anyways.  Due to this pressure, Peralta did go into work.

41.     Day Rizer also wanted Plaintiff to interview a potential new employee on March 19. Peralta told Day Rizer that she did not believe it was safe to have a stranger in the restaurant and reminded her that she was not feeling well. Peralta refused to interview the interviewee.

42.     Day Rizer openly discussed that she was not concerned with the pandemic and made jokes about Governor Whitmer and the Executive Orders related to the restaurant industry.

43.     On March 19, 2020, several employees again had a conversation about how they were afraid of retaliation from Day Rizer for refusing to work for free.  The conversation also included a discussion about how Day Rizer was not taking the

pandemic seriously and was not interested in employee safety or following the rules related to it.

44.     On March 20, 2020, Ogilvie informed a worker with her same position, Anna, that she did not feel comfortable collecting unemployment while coming into work.  Therefore she would no longer be coming into work. Within an hour, Day Rizer instructed Ogilvie head home and to bring her work laptop with her to perform work.

45.     March 20, 2020 was the final date Ogilvie worked on site. She continued to work from home for about another week then informed Defendant she was unwilling to work while on unemployment.

46.     Peralta stayed home on March 20, 2020 due to a soar throat and other symptoms which could potentially be attributed to Covid-19.  That day, Day Rizer called and left Peralta a voicemail to call her back.  Peralta texted Day Rizer and said that her throat was still sore. Day Rizer instructed Peralta not to come in and to stay at home until she had some plan from the owners.

47.     After, Peralta called Day Rizer to discuss what she meant in her text. During this conversation, Peralta said she was fearful that she had Covid-19 or that it possibly could be that she was symptomatic due to the anxiety and stress of what is being asked of her by Day Rizer. Day Rizer said she was going to discuss the matter with the owners and figure out a plan for Peralta. Day Rizer also quipped that it seemed younger people were terrified of the pandemic but "us older people aren't scared."

48.     Peralta and her boyfriend tried but had difficulty obtaining Covid-19 tests.

49.     Haroutunian continued working longer than Peralta and Ogilvie. However, Haroutunian opted not to apply for unemployment.

50.     For a short period of time, Haroutunian continued to work for Defendant unpaid without applying for unemployment because he knew it would be either fraudulent to utilize unemployment as wages for performing is actual work.

51.     Haroutunian continued to perform largely unpaid work for Defendant until early May 2020.

52.     On March 27, 2020, Peralta sent a text to Day Rizer to inform her that she was feeling better.  Peralta asked if there were any updates and inquired when Big Rock would return to its normal business (meaning she was not going to come in on unemployment). Peralta did not receive a response.

53.     On March 30, Day Rizer responded telling Peralta to sit tight and provided a link for Peralta to provide to her employees for a financial relief opportunity for restaurant workers during the pandemic. Peralta shared this link with Defendant's employees as instructed.  Ogilvie received a similar email.

54.     During this off period, Peralta was told by a coworker that Day Rizer and other management were stating that Peralta abandoned her job and was refusing to work.

55.     Likewise, Haroutunian was told by Day Rizer that she would be taking care of the individuals who had been there performing work over the pandemic.

56.     Peralta received no communications from Defendant between March 30 and April 21.

57.     On April 21, 2020, Peralta emailed Day Rizer and Defendant's accountant inquiring about her unemployment claim.  Peralta received a statement from the agency that Defendant had provided a certain response. Day Rizer responded that Defendant was not contesting the unemployment.

58.     On May 2, 2020, Day Rizer deactivated Peralta's access to shift notes and other management systems without notice.

59.     On or around May 7, 2020, Haroutunian fell ill with Covid-19 related symptoms and sought leave.  His final work date on site was May 9, 2020.

60.     Haroutunian received no communication from Defendant after seeking quarantine until his termination.

61.     On May 11, 2020, Ogilvie sent Day Rizer an email requesting an update. Day Rizer responded the following the day instructing Ogilvie to search for another job because she likely would not have a place in the future with Big Rock.

62.     On May 18, 2020, Peralta emailed Day Rizer inquiring whether there was going to be a manager's meeting to discuss reopening Big Rock and getting things back to normal. Day Rizer did not respond.

63.     On May 26, 2020, Peralta received a call from Day Rizer informing her that she was being terminated.  Peralta immediately stated that she felt she was being

retaliated against for refusing to come in and work while on unemployment. Day Rizer responded she was instructed by the owners that she "had to make some cuts and had to take care of the people who had been there for the last three months with her." (*the people who at least partially worked while collecting unemployment*)

64.     Haroutunian was also notified he was terminated and not being reinstated into his position on May 26, 2020.

65.     During the period of March 19-May 26, 2020, numerous employees of Defendant were asked and agreed to work while collecting unemployment benefits. These employees either retained their positions or refused an offer of reinstatement.

66.     On information and belief, the only four people who were not offered reinstatement following the reopening were the individuals who did not perform unpaid work during the period in which they collected unemployment and/or took leave due to Covid-19 symptoms. Three of these four people are Plaintiffs in this lawsuit.

67.     On information and belief, someone has been hired or promoted to replace each Plaintiff in their previously held positions.

## COUNT I
## UNLAWFUL RELATIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 215)

68.     All preceding paragraphs are incorporated by reference.

69.     At all relevant times, Plaintiffs and Defendant were covered by and within the meaning of the Fair Labor Standards Act, 29 U.S.C 201, *et seq*.

70.    Plaintiffs engaged in protected activity by refusing to perform unpaid work.

71.    Plaintiffs engaged in protected activity when they openly discussed refusing to perform unpaid work with her coworkers.

72.    Defendant retaliated against Plaintiffs by terminating and replacing them due to their refusal to perform unpaid work in violation of the FLSA.

73.    Defendant's discrimination, retaliation, and discharge was prohibited under the FLSA (29 U.S.C. § 215(3)).

74.    The actions of Defendant were intentional and willful.

75.    As a direct and proximate result of Defendant's unlawful actions against Plaintiffs, as described in this Complaint, Plaintiffs have sustained injuries and damages, including, without limitation, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community, and loss of the ordinary pleasures of everyday life, including the opportunity to pursue their gainful occupation of choice.

## COUNT II
## RETALIATION--MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT –Mich. Comp. Laws. Ann. 408.411

76.    All preceding paragraphs are incorporated by reference.

77.     Defendant retaliated against Plaintiffs by terminating and replacing them because they did not perform unpaid work and/or refused to perform unpaid work in violation of the Michigan Workforce Opportunity Wage Act.

78.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; significant medical bills; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT III**
**VIOLATION OF THE FFCRA, FLSA, AND FMLA – INTERFERENCE**
*(Peralta and Haroutunian)*

79.     All preceding paragraphs are incorporated by reference.

80.     As a result of the Covid-19 pandemic, Congress expanded the FMLA through the FFCRA to cover Employers with under 50 employees for Covid-19 related purposes.

81.     The FFCRA, specifically, the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and

is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))*

82.    Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See* 29 *C.F.R. § 826.20*

83.    The Department of Labor has ruled Covid-19 related symptoms as experiencing a fever, dry cough, sore throat, or shortness of breath; or other symptoms identified by the US Centers for Disease Control and Prevention (CDC).

84.    An employee returning from FFCRA paid sick leave or family leave has the right to be restored to the same or an equivalent position under the FMLA. *See* 29 *C.F.R. § 826.30(a)*

85.    That to that end, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

86.    That at all times material hereto, Defendant was a covered employer as defined by the FMLA, the FFCRA, and the applicable federal regulations.

87.    The Defendant has less than 500 employees.

88.    Plaintiffs were an eligible for sick leave and paid leave under the FFCRA.

89.     Plaintiffs Peralta and Haroutunian required leave for "a qualifying need related to a public health emergency" and/or were "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

90.     Plaintiffs informed Defendant that they needed leave due to symptoms related to Covid-19 or provided enough information that a reasonable person would infer this.

91.     Defendant was aware Plaintiffs required leave for these reasons.

92.     Defendant required Plaintiff Peralta to come in and work despite her request for leave.

93.     Defendant did not compensate Plaintiffs Peralta and Haroutunian during their available protected leave as required pursuant to the FFCRA.

94.     Defendant intentionally ignored Plaintiff Peralta after she stated she had recovered from her Covid-19 symptoms and were ready to return to work.

95.     Defendant terminated or otherwise refused to reinstate Plaintiffs Peralta and Haroutunian for taking leave which was protected under the FMLA.

96.     Defendant failed to inform Plaintiffs of their rights pursuant to the FFCRA, FMLA, and FLSA.

97.     Defendant did not inquire further to obtain any additional information or doctor's notes from Plaintiffs regarding their medical condition and need for leave.

98.     Defendant has interfered with and denied Plaintiffs their FFCRA/FMLA rights as described above and herein, including, but not limited to, failing to preserve Plaintiffs' positions as they took leave protected by the FFCRA/FMLA to address Covid-19 symptoms and testing and instead discharging Plaintiffs in violation of the FMLA and FFCRA.

99.     Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiffs.

100.    Defendant's interference with Plaintiffs' FFCRA/FMLA leave has directly and proximately caused Plaintiffs great damages, including embarrassment, humiliation, outrage, mental distress and economic loss of large but as of yet undetermined proportions.

**COUNT IV**
**VIOLATION OF THE FFCRA AND FMLA – RETALIATION**
*(Peralta and Haroutunian)*

101.    All preceding paragraphs are incorporated by reference.

102.    Plaintiffs took leave which was protected under the FMLA as expanded by the FFCRA.

103.    Defendant retaliated against Plaintiffs in violation of the FMLA leave by terminating them for taking leave which qualified as protected leave in violation of the FMLA and FFCRA.

104.    Defendant deliberately ignored Plaintiffs following their leave.

105.    Defendant's GM Day Rizer explicitly told Plaintiff Peralta that she needed to take care of the individuals who actually worked during the break.

106.    Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiffs.

107.    There is a causal connection between Plaintiffs' protected activity and Defendant's retaliatory actions described above.

108.    As a direct and proximate result of Defendant's unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

109.    All preceding paragraphs are incorporated by reference.

110.    Defendant wrongly terminated each Plaintiff in contravention of public policy in that Plaintiffs refused to violate the law.

111.    Defendant terminated Plaintiffs for their refusal to work unpaid while collecting unemployment—an act which amounts to fraud.

112.    Defendant encouraged its employees to violate the law by performing unpaid work while collecting unemployment.

113.   Defendant rewarded the employees who violated the law by retaining their positions while punishing those who did not perform unpaid work with termination or lay off.

114.   Defendant discharged Plaintiffs in illegal retaliation for exercising a well-established right.

115.   Defendant in bad-faith, wrongfully, maliciously, and intentionally terminated the Plaintiffs' employment, or otherwise refused to reinstate the Plaintiffs, in violation of the public policy, causing them to be humiliated in the process.

116.   Defendant's termination of Plaintiffs in violation of public policy of the State of Michigan has damaged their loss of earnings and earning capacity; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a.   Grant Plaintiffs all available compensatory damages for economic injury, including back and front pay, mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

b.   Grant Plaintiffs Peralta and Haroutunian all available liquidated damages pursuant to the FLSA, FFCRA, and FMLA;

c.      Grant Plaintiffs' reasonable attorney's fees and costs incurred in this

litigation; and

d.      Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By:  /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: August 13, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MOLLY PERALTA,**
**CAITLIN OGILVIE,** and
**CHRISTIAN HAROUTUNAIN,**

           Case No. 20-cv-11817

        Plaintiffs,

vs.                 Hon. Gershwin A. Drain

**ETON STREET RESTAURANT, INC.** d/b/a
**BIG ROCK CHOP HOUSE**,

        Defendant.

_____/

| | |
|---|---|
| Jack W. Schulz (P78078) | CHRISTOPHER E. LeVASSEUR |
| SCHULZ GOTHAM PLC | (P35981) |
| PO Box 44855 | STARK REAGAN, PC |
| Detroit, MI 48244 | 1111 W. Long Lake Rd., Ste. 202 |
| (313) 246-3590 | Troy, MI 48098 |
| jackwschulz@gmail.com | (248) 641-9955 |
| *Attorneys for Plaintiff* | clevasseur@starkreagan.com |
| | *Attorneys for Defendant* |

_____/

## DEMAND FOR TRIAL BY JURY

      Plaintiffs Molly Peralta, Caitlin Ogilvie, and Christian Haroutunian hereby

demand for a trial by jury.

                        Respectfully submitted,

                        By: /s/ Jack W. Schulz
                        Jack W. Schulz (P78078)
                        SCHULZ GOTHAM PLC
                        *Attorney for Plaintiff*
                        PO Box 44855
                        Detroit, MI 48244

(313) 246-3590

DATE: August 13, 2020